CHANEY v WHITING CORPORATION

BILLINGS v WHITING CORPORATION

CHRISTIE v WHITING CORPORATION

Docket Nos. 44634, 44635, 44636. Submitted June 19, 1980, at Detroit.
    —Decided September 15, 1980. Leave to appeal applied for.

Fred A. Chaney, Ruben Billings, Sr., and Ronald Christie were
burned while working in a General Motors plant. The explosion
from which their injuries resulted originated from a cupola
operation. At the end of each week, doors on the bottom of the
cupola vessel are opened and the molten contents are dropped
onto sand. If the sand is wet, an explosion or fireball will occur.
It is uncontested that the machine at issue functioned as it was
designed to function. The injured men and their wives brought
suit against Whiting Corporation, in Wayne Circuit Court. The
plaintiffs contended that the cupola could and should have been
made safer by the addition of certain devices. After a jury
verdict was returned granting a substantial award of damages
to each plaintiff a judgment for plaintiffs was entered, William
J. Giovan, J. The defendant appealed and the Court of Appeals
consolidated the cases for hearing. *Held:*

1. A plaintiff can submit to a jury the questions of whether a
product was unreasonably designed without offering evidence
that the designer failed to follow industry standards, since the
question of reasonableness is a question for the jury. Here, the
evidence was sufficient to establish that a defective product was
the proximate cause of the plaintiffs' injuries.

2. The negligence of the General Motors foreman who did not
sound the alarm prior to dropping the molten iron from the
cupola was not an independent intervening cause of plaintiffs'
injuries. On the contrary, it was foreseeable that a foreman
might forget to sound an alarm.

3. The trial court did not abuse its discretion by permitting

REFERENCES FOR POINTS IN HEADNOTES

[1] 63 Am Jur 2d, Products Liability §§ 63, 66.

   Modern cases determining whether product was defectively de-
   signed. 96 ALR3d 22.

[2] 31 Am Jur 2d, Expert and Opinion Evidence §§ 3, 31.

the plaintiffs' expert witness to testify concerning general safety principles since the adequacy of the industry's safety standards, if any existed, was properly at issue.

Affirmed.

1. PRODUCTS LIABILITY — JURY QUESTIONS — UNREASONABLE DESIGN.

A plaintiff can submit to a jury the question of whether a product was unreasonably designed without offering evidence that the designer failed to follow industry standards, since the question of reasonableness is a question for the jury.

2. WITNESSES — EXPERT WITNESSES — QUALIFICATIONS — RULES OF EVIDENCE.

The determination of an expert's qualifications is within the sound discretion of the trial court (MRE 702).

*Cicinelli, Mossner, Majoros & Alexander, P.C.,* for plaintiffs.

*Troester, Picard, MacNeil, Learman & DeWit,* for defendant.

Before: N. J. KAUFMAN, P.J., and CYNAR and J. E. TOWNSEND,* JJ.

N. J. KAUFMAN, P.J. After a jury trial in Wayne County Circuit Court, a verdict was returned granting a substantial award to each plaintiff. The defendant appeals as of right.

The facts in the instant case are not in dispute. Briefly, the three plaintiffs were burned while at work in a General Motors plant. The explosion from which their injuries resulted originated from a cupola (a device in which metals are melted). There is no dispute that plaintiffs were properly at work in an area 20 to 25 feet above the floor and 50 feet from the cupola in question. At the end of each week, doors on the bottom of the cupola vessel are opened and the molten contents are

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dropped onto sand. If the sand is wet, an explosion or fireball will occur.

It is uncontested that the machine at issue functioned as it was designed to function. It is asserted, however, that the cupola could and should have been made safer by the addition of certain devices. The issue at trial was whether or not such devices were feasible.

Defendant argues that the first significant legal question is whether or not the machine was designed and manufactured to eliminate unreasonable risks of foreseeable injuries. The Supreme Court has held that:

"[W]hether defendants * * * created an unreasonable risk of harm * * * is for a jury to decide, reasonable persons being of different minds." *Moning v Alfono,* 400 Mich 425, 432; 254 NW2d 759 (1977).[1]

Defendant next contends that even if the product was foreseeably misused, by using wet sand, the plaintiffs were not within the class of people whom the manufacturer could have foreseen as being within the zone of danger when the bottom-dropping procedure commenced. The cupola operator was behind a brick wall, and, defendant alleges, this design was sufficient to protect the only person foreseeably within the area at the time the cupola was emptied. This, we also believe, is a question for a jury.

Defendant further contends that, as a matter of law, a plaintiff cannot submit to a jury the question of whether a product was unreasonably designed without offering evidence that the defen-

[1] Although *Moning* was decided in the context of a marketing situation rather than in the area of product design, we find the proposition of law cited therein equally applicable to the fact situation presented by the instant case.

dant-designer failed to follow industry standards. Such evidence was not offered in the instant case.

Defendant bases its position, that evidence of a breach of an industry standard is necessary to establish a cause of action in a products liability case alleging defective design, on this Court's opinion in *Owens v Allis-Chalmers Corp,* 83 Mich App 74; 268 NW2d 291 (1978), *lv gtd* 405 Mich 827 (1979). In *Owens,* a case in which I concurred separately, the majority held that a design defect could be established only upon proof:

"(1) That the particular design was not in conformity with industry design standards, design guidelines established by an authoritative voluntary organization, *or* design criteria set by legislative or other governmental regulation; *or*

"(2) That the design choice of the manufacturer carries with it a *latent* risk of injury *and* the manufacturer has *not* adequately communicated the nature of that risk to potential users of the product." *Id.,* 81. (Emphasis in original.)

The majority opinion in *Owens* reasoned that because decisions concerning the design of a product are multifaceted, the decision as to whether a particular product was reasonably designed should not be left to the jury system.

Although I did concur separately in the result in *Owens, supra,* my concurrence was based upon my belief that plaintiffs in that case had failed to show the proximate cause of the accident. In fact, the case on which I relied for my opinion, *Elsasser v American Motors Corp,* 81 Mich App 379; 265 NW2d 339 (1978), states that "[t]he questions of foreseeability of injury and reasonableness of protective and preventative measures taken [in products liability actions] are questions *for the jury"*.

*Id.,* 385, 386. (Emphasis added.) *Elsasser* goes on to discuss industry custom as evidence and holds that while "[i]t is hornbook law that a manufacturer may show compliance with industry standards to indicate reasonableness * * * the industry standard is always open to question of reasonableness. Prosser, Torts (4th ed) § 33, 96, pp 166-168, 645. Reasonableness is ultimately a question for the jury." *Elsasser, supra,* 386.

I feel that it is clear that my concurrence in *Owens v Allis Chalmers, supra,* was based upon my view that causation had not been proven. If, however, my separate concurrence is seen as an affirmance of the majority opinion, I must admit error. It is my view that the question of reasonableness is, indeed, a question for the jury. Unlike my opinion in *Owens,* I feel here the evidence was sufficient to establish that a defective product was the proximate cause of the plaintiffs' injuries. I cannot say that the negligence of the General Motors foreman, who did not sound the alarm prior to dropping the molten iron from the cupola, was an independent intervening cause of plaintiffs' injuries. On the contrary, it was certainly foreseeable that a foreman might forget to sound an alarm. See *Comstock v General Motors Corp,* 358 Mich 163, 178; 99 NW2d 627 (1959). This is precisely the reason that an automatic interlock between the alarm and cupola doors should have been included in the design. Additionally, since defendants did not raise the issue of an independent intervening cause at the trial court, this issue was not preserved for appeal.

Defendant raises among its grounds of error the contention that the trial court abused its discretion by permitting the plaintiffs' expert witness to offer opinions outside his area of expertise. We find

that the determination of an expert's qualifications is within the sound discretion of the trial court, MRE 702, and we find no abuse of discretion in allowing the plaintiffs' witness to testify.

Defendant contends that, because the expert based his opinion on general safety principles and not on an industry standard, it was error to allow his opinion. Defendant relies for this argument on this Court's holding in *Owens, supra.* Again, if this case were decided in accordance with the majority opinion in *Owens,* the only standard material to the issues being tried would be the industry standard, which was not the basis for the expert's opinion in the case at bar. However, if this case is decided consistent with *Elsasser, supra,* the adequacy of the cupola industry's safety standards, if any existed, was properly at issue. *Id.,* 386. Furthermore, MRE 702 does not require knowledge of industry standards in order for an expert witness to be qualified. Because the expert was qualified to give his opinion and because this opinion was material to a factual issue properly before this Court, I find no error in allowing his testimony.

Because I find that the majority opinion in *Owens v Allis-Chalmers Corp, supra,* is inconsistent with prior Supreme Court precedents and traditional products liability theory, its rules should not be applied to the instant cases.

Affirmed.