Dawn BONDIE, Individually and as Next Friend of Nicholas Bondie, Amanda Bondie, Nathan Bondie and Elizabeth Bondie, Plaintiffs,

v.

BIC CORPORATION, a foreign corporation, Defendant.

No. 88–CV–73064–DT.

United States District Court, E.D. Michigan, S.D.

June 1, 1990.

Philip Vestevich, Vestevich, Dritsas, Bloomfield Hills, Mich., for plaintiffs.

Thomas M. Peters, Vandeveer, Garzia, Detroit, Mich., for defendant.

### MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

### I. *Background*

This product liability action results from injuries sustained by members of the Bondie family when the family home burned. The fire was started when three-year-old Amanda Bondie played, unsupervised, with a Bic disposable cigarette lighter that she had taken from her father's coat pocket, as the coat lay in or near her father's bedroom. Her father had purchased the Bic lighter.

The Bondies sued Bic Corporation ("Bic"), alleging negligence, breach of implied warranty, reckless and wanton misconduct, and a claim under the Consumer Product Safety Act, 15 U.S.C. § 2072(a). In motions entitled "Motion for Partial Summary Judgment" and "Defendant's Renewed Motion for Summary Judgment," Bic moves for summary judgment, citing Fed.R.Civ.P. 56, and to dismiss, citing Fed. R.Civ.P. 12(b)(6). A hearing was held on February 27, 1990. The case is here by reason of diversity of citizenship. The motion is granted in part and denied in part.

### II. *Analysis*

The parties' briefs do not separate the Rule 12(b)(6) analysis from the Rule 56 analysis. As such, it is difficult to parse the precise arguments with respect to each. Although I gathered in the hearing that Bic was moving both for dismissal and summary judgment with respect to each standing count, and since I am reluctant to invent arguments for the parties, I will assume that arguments not addressed in the papers or hearing were not made.

Under the *Erie* doctrine, Michigan law governs the tort and contract claims; federal law governs the Consumer Product Safety Act claim.

### A. Negligence
#### 1. *Dismissal*

■ Negligence requires duty. Bic contends that since no such duty exists, this claim should be dismissed, citing Fed.R. Civ.P. 12(b)(6). Bic's premise is mistaken.

■ In a design defect case, a manufacturer's duty is to design its product "to eliminate any unreasonable risk of foreseeable injury." *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 692–93, 365 N.W.2d 176 (1984). Whether a defendant owes a plaintiff an actionable duty is a question of law prem-

ised on legislatively or judicially declared public policy. *Moning v. Alfono,* 400 Mich. 425, 436–38, 254 N.W.2d 759 (1979).

Plaintiff claims additionally that Congress has created a duty through the Consumer Product Safety Act. I reject this claim. *See infra,* Section II.D.

■ In general, under Michigan's negligence law, the determination whether judicial policy will impose a duty "is based on a balancing of the societal interest involved, the severity of the risk, the burden upon the defendant [to meet the duty], the likelihood of occurrence, and the relationship between the parties." *Swartz v. Huffmaster Alarms Sys., Inc.,* 145 Mich.App. 431, 434, 377 N.W.2d 393 (1985). This formulation of the test, while *obiter dictum,* is particularly well-suited to the product-liability context, in that it illuminates the factors relevant to assessing the reasonableness of risk under the *Prentis* test.

Michigan's appellate courts have not addressed the duty question as to cigarette lighters. No cases exist even concerning matches. Bic submits that three judicial doctrines nevertheless guide the policy outcome in its favor.

■ First, Bic says that no duty exists to make a product child-proof or even child-resistant, where the product is intended for use exclusively by adults. Bic cites a number of extra-jurisdictional cases for this contention. Bic argues that the danger's unreasonableness is measured from the adult consumer's perspective, but acknowledges that Michigan's state trial courts have split on the issue in other lighter cases.

■ Michigan law clearly vitiates this argument. Under Michigan law, duty rests upon foreseeable misuse, not intentional use. *Rutherford v. Chrysler Motors Corp.,* 60 Mich.App. 392, 231 N.W.2d 413 (1975) (manufacturers have duty to design cars so as to eliminate unreasonable risks of foreseeable injury); *Chaney v. Whiting Corp.,* 100 Mich.App. 108, 110, 298 N.W.2d 681 (1980) (manufacturer required to foresee probable uses, not only intended uses). A child's inevitable access and attraction to a product must be taken into account when assessing duty. *Crowther v. Ross Chem. Co.,* 42 Mich.App. 426, 202 N.W.2d 577 (1972) (negligence and implied warranty theories survived summary judgment with regard to whether glue manufacturer knew that glue sniffing was attractive to children); *see also, Drayton v. Jiffee Chemical Corp.,* 395 F.Supp. 1081 (N.D.Ohio 1975), *judgment modified* 591 F.2d 352 (6th Cir.1978) (manufacturer of caustic drain cleaner has duty to design container so as to minimize risk of toddler tipping and spilling).

■ Certainly, no manufacturer has a duty to make a product accident proof, for manufacturers are not insurers. *Prentis,* 421 Mich. at 682–83, 365 N.W.2d 176. A child may, unfortunately, harm itself with many things. *See Kelley v. Rival Mfg. Co.,* 704 F.Supp. 1039 (W.D.Okl.1989) (hot pot); *Bellotte v. Zayre Corp.,* 531 F.2d 1100 (1st Cir.1976) (pajamas); *Brawner v. Liberty Indus., Inc.,* 573 S.W.2d 376 (Mo. App.1978) (gasoline container); *Simpson v. Standard Container Co.,* 72 Md.App. 199, 527 A.2d 1337 (1987), *cert. denied,* 311 Md. 286, 533 A.2d 1308 (1987) (gasoline container). Yet, the fact that a child may harm itself with many things is no reason why society cannot require a manufacturer to be aware of the risk involved in the use of its particular product. The cases cited do not involve colorful little lighters. Thus, they are not helpful in assessing the duty in this case.

■ Second, Bic says product malfunction is not alleged, and so no product liability claim lies as a matter of law, citing a Michigan Appellate court opinion, *King v. R.G. Indus.,* 182 Mich.App. 343, 451 N.W.2d 874 (1990). But *King* did not involve a design defect. *Prentis,* 421 Mich. at 693, 365 N.W.2d 176, clearly holds that in design defect cases, a manufacturer is liable for the foreseeable misuses of its product. *Moning* holds that where children are concerned, an action may lie even if the product itself is functioning properly. *Moning* involved a slingshot. *Chaney* and *Crowther* hold that the fact that children may not be the intended users is irrelevant.

Product misuse is only evidence of comparative fault. *See* M.C.L. § 600.2949(1).[1]

The cases that Bic cites and that involve lighters do not bind this court. To the extent that those cases are not distinguishable from this case, I respectfully disagree with their reasoning. *See Adams v. Perry Furniture Co.*, No. 86–320049–NP, slip op. (Mich.Cir.Ct. June 2, 1989) (Order Granting Motion for Summary Judgment); *Sedlock v. Bic Corp.*, 741 F.Supp. 175 (W.D.Mo. 1990) (Order); *Eads v. Bic Corp.*, 740 F.Supp. 1433 (W.D.Mo.1989) (Order); *Lasseigne v. Bic Corp.*, No. GC–G–88–391, slip op. (Fla.Cir.Ct. May 31, 1989) (Order Granting Partial Summary Judgment).

■ Applying the risk-utility balancing test adopted in *Prentis*, and using the factors relevant to assessing risk from *Swartz*, I hold that Bic has a duty to make its lighter child-resistant. The severity of the risk is assessed by combining the likelihood of injury with the severity of injury. The Bondies claim that the likelihood is high.[2] The severity of injury is great: facial disfigurement, property loss, and possible death. The burden on defendant to make an alternate design has yet to be proven. Yet, Bic admitted at the hearing that it had a child-resistant design in place at the time Amanda Bondie played with the lighter. The societal interest in having Bic's lighters—used primarily to light cigarettes—cannot be said to outweigh the likelihood of injury to a child.

■ The relationship between the parties is important: Bic has distributed to the marketplace millions of brightly-colored little plastic lighters. Each projects a fairly large-sized flame when its throttle is fully open. I must assume the Bondies' contention as true, that children are attracted to the lighters. I must also assume as true that a warning is not always attached to the lighter at the time of sale, since the lighters are also displayed loosely in bins. There are no age restrictions on purchase or use of these lighters. These attributes of the lighters maximize sales and profit. As a matter of fact, Bic knows that children can and will operate the lighter, despite a parent's reasonable efforts to keep it from the child.[3]

The Maine Superior Court reached a similar conclusion, under the same risk-utility balancing test:

> [I]t cannot be controlling as a matter of law that the intended user is an adult person to whom, as an ordinary person, the risk of danger by fire of a Bic lighter may be obvious. It is reasonably foreseeable that a Bic lighter is the type of product that the ordinary user will use and keep in the household, so that young children are likely to have access to it and to play with and to seek to operate it. Indeed, it is precisely because of such reasonably foreseeable likelihood that Bic has seen fit to say on its packaging "Keep Away from Children" and "Keep Out of the Reach of Children."

*Redman v. Bic Corp.*, No. CV–86–1196, slip op. at 3 (Maine Super.Ct. Jan. 8, 1990). I find its reasoning persuasive.

The Michigan Court of Appeals reached a similar result in *Crowther, id.* (glue sniffing).

Third, Bic argues that it has no duty to warn of "open and obvious" dangers, *citing Bishop v. Interlake, Inc.*, 121 Mich. App. 397, 328 N.W.2d 643 (1982); *Antcliff*

---

1. M.C.L. § 600.2949 also applies to implied warranty claims. *Karl v. Bryant Air Conditioning Co.*, 416 Mich. 558, 569, 331 N.W.2d 456 (1982).

2. The amended complaint alleges that "children playing with disposable butane lighters annually cause thousands of residential fires, injuring and killing hundreds of persons." Amended Complaint, p. 5 at para. 22(e).

3. Bic states, in its brief, that "Defendant Bic Corporation relies upon parents to keep their product out of the reach of children and thus, due to the warning, it is not reasonably foreseeable that a child will obtain the lighter." Defendant's Renewed Motion for Summary Judgment, p. 4. The assertion is overly legalistic. The Bondies allege that Bic had actual knowledge that children obtain and operate lighters. Reliance on parents as intervening actors may go to the degree of negligence, but does not as a legal matter prevent the Bondies from taking the question of Bic's negligence to the jury.

*v. State Employee Credit Union,* 95 Mich. App. 224, 290 N.W.2d 420 (1980), *aff'd,* 414 Mich. 624, 327 N.W.2d 814 (1982).

 Bic's argument is outdated. Since 1982, the "open and obvious" exception has been obsolete. *See Owens v. Allis–Chalmers Corp.,* 414 Mich. 413, 326 N.W.2d 372 (1982); *see also Horen v. Coleco Indus., Inc.,* 169 Mich.App. 725, 729, 426 N.W.2d 794 (1988), *appeal dismissed,* 431 Mich. 913, 447 N.W.2d 152 (1988).[4] Further, a warning is insufficient to eliminate risks of foreseeable injury to children as a matter of law.[5] Here, I must assume that there was no warning. But even had there been a warning, the duty to the child would not necessarily be discharged. The Maine Superior Court reached a similar conclusion, under the same risk-utility balancing test adopted in Michigan by *Prentis,* that

> [I]t is not controlling here, as a matter of law that the Bic lighter packaging gave the warning it did. That such a warning has been given is not necessarily enough to prevent the potential harm arising from an adult's inadvertent misplacement of the lighter and a child's resulting foreseeable access to it. The casual way lighters are used increases the likelihood that an adult user will, despite warnings to keep the lighter away from children, misplace it or leave it where a child will come upon it.

*Redman v. Bic Corp.,* No. CV–86–1196, slip op. at 4 (Maine Super.Ct. Jan. 8, 1990). I find that reasoning persuasive.

I find that Bic has a duty to design a child-resistant lighter. Therefore, Bic's motion to dismiss the negligence count is DENIED.

### 2. *Summary Judgment*

Bic has not explicitly argued that no genuine material issue of fact exists as to whether the duty was breached. Thus, I decline to rule on summary judgment in this respect.

## B. Breach of Implied Warranty

### 1. *Dismissal*

 Generally, breach of implied warranty is a cause of action distinct from negligence under Michigan's product liability law. *Prentis,* 421 Mich. at 691–93, 365 N.W.2d 176. Nevertheless, *Prentis* holds that where a design defect claim is made against a manufacturer, a negligence instruction covers breach of implied warranty, and so the trial judge's refusal to give an implied warranty instruction was not error, since to do so would only have confused the jury. While the *Prentis* opinion was limited to its facts, *id.* at 692, 365 N.W.2d 176, the Michigan Supreme Court used the opportunity categorically to disapprove of instructing a jury on breach of implied warranty with Standard Jury Instruction 2d 25.22 in defective design cases. *Id.* at 695 n. 32, 365 N.W.2d 176. As such, allowing proofs to trial on this issue would serve no purpose. Because this is a diversity case, *Prentis* requires that I dismiss the breach of implied warranty count.[6]

As in *Prentis,* although the Bondies claim that their injuries were proximately caused by Bic's negligence and breach of an implied warranty, the evidence at trial

---

**4.** One panel of the Michigan Court of Appeals has held that the "open and obvious" exception is still valid for "simple" products. *Spaulding v. Lesco International Corp.,* 182 Mich.App. 285, 451 N.W.2d 603 (1990). In light of *Owens,* I reject the *Spaulding* test. *Spaulding* involved injury sustained by an adult who dove head-first into a shallow swimming pool. The *Spaulding* opinion did not define "simple"; neither did it say from whose perspective "simple" is to be evaluated. The Michigan Court of Appeals' decisions are merely data which the federal court must take into account when indications that the state supreme court would rule otherwise are absent. *Grantham & Mann, Inc. v. American Safety Prod., Inc.,* 831 F.2d 596 (6th Cir. 1987). Here, the datum is in conflict with the plain holding in *Owens,* as well as the datum of *Horen* on the same facts, and so I reject it.

**5.** Although the Bondies withdrew the failure to warn count from their complaint, the warning's effectiveness is still relevant in assessing Bic's duty to the Bondies as a matter of law.

**6.** Although I am bound by the decision of the Michigan Supreme Court, I believe that juror confusion is not necessarily inevitable in these cases, should implied warranty and negligence claims both be tried. I see the two theories as distinct. I do not agree that implied warranty necessarily involves proof of negligence in defective design cases.

will focus on the single claim that Bic defectively designed the lighter because it failed to provide a child-resistant device. Thus, recovery under either theory will require the jury to determine whether the lighter was defectively designed; *i.e.*, "unreasonably dangerous" because it did not contain such a device. *Id.* at 693–94, 365 N.W.2d 176. *See also Parker v. Olfa Corp.*, 709 F.Supp. 794 (E.D.Mich.) (Duggan, J.) (defendant entitled to dismissal of implied warranty count where negligence is also alleged in design defect cases); *Bogorad v. Eli Lilly & Co.*, 768 F.2d 93 (6th Cir.1985) (Contie, J., concurring) (on remand, plaintiff limited to proving negligence).[7]

Hence, Bic's motion to dismiss the implied warranty count is GRANTED.

### 2. *Summary Judgment*

Defendant has chosen to treat negligence and implied warranty together for purposes of its motion. As with the negligence count, with respect to implied warranty, Bic has not explicitly argued that no genuine material issue of fact exists as to whether the product was unfit for anticipated, intended, or foreseeable uses. Thus, I decline to rule on summary judgment in this respect. In any case, given that the breach of implied warranty count is dismissed, a summary judgment motion would be moot.

### C. Reckless and Wanton Misconduct

#### 1. *Dismissal*

■ Bic contends that "reckless and wanton conduct"[8] is not a cause of action in Michigan. Bic argues that the Product Liability Act, M.C.L. § 600.2945 *et seq.*, does not establish new causes of action; while it specifically preserves existing legal and equitable causes, "willful and wanton" has never been used in the products liabili-

ty arena. Rather, Bic recounts, the notion was used in the pre-comparative negligence regime[9] to mitigate the otherwise harsh result of finding a plaintiff contributorily negligent in light of a defendant's willful and wanton misconduct, *citing Burnett v. City of Adrian*, 414 Mich. 448, 461, 326 N.W.2d 810 (1982) (Moody, J., concurring). Bic says the notion survives today only in the Recreational Users Statute, *citing Vining v. City of Detroit*, 162 Mich.App. 720, 728, 413 N.W.2d 486 (1987) and *Burnett, id.*.

While Justice Moody's historical observation is sound, Bic goes too far in saying that the cause of action for willful and wanton misconduct is therefore all but obsolete. Bic's theory is inconsistent with *Gibbard v. Cursan*, 255 Mich. 311, 196 N.W. 398 (1923) (willful and wanton misconduct is a separate cause), and ignores *Citizens' Ins. Co. v. Lowery*, 159 Mich.App. 611, 407 N.W.2d 55 (1987) (trial court's finding of "willful and wanton" misconduct triggered exception to no-fault act's abolition of tort liability). *Burnett* held only that willful and wanton misconduct is actionable under the Recreational Users Statute, not that such misconduct cannot be alleged outside the statute. Indeed, *Burnett* implied strongly that a cause of action for willful and wanton misconduct would be available in other factual and legal contexts: The court expressly declined to revisit the elements of that cause of action because that court reasoned that a future factual and legal posture would give the court a better opportunity to describe a clear, widely applicable test. *Burnett*, 414 Mich. at 454–56, 326 N.W.2d 810. Thus, I hold that under these cases, a cause of action for willful and wanton misconduct still exists.

Bic reasons further that even if the willful and wanton standard applies here, Bic's

---

7. Plaintiff cites *Granger v. Fruehauf Corp.*, 429 Mich. 1, 412 N.W.2d 199 (1987), and *Clark v. Seagrave Fire Apparatus, Inc.*, 170 Mich.App. 147, 427 N.W.2d 913 (1988). Both cases were tried before *Prentis* was decided, and both explicitly found this as a reason to distinguish their holdings. As such, they do not apply here.

8. The Bondies' lawyer stated at the hearing that by alleging "reckless and wanton" misconduct,

the Bondies do not intend to distinguish their cause from that of "willful and wanton" misconduct.

9. Comparative negligence was adopted in Michigan in *Placek v. Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979), *reh'g denied*, 406 Mich. 1119 (1979).

conduct did not rise to that level, because there was no intent or constructive willingness (extreme indifference) to harm, as evidenced by the warning given on all lighter packages.

■■■ What Bic seems to be saying is that the existence of a warning mitigates reckless indifference as a matter of law. Yet, Bic cites no authority for this proposition. The Bondies do not answer this argument directly. Even if Bic's contentions were correct, I cannot dismiss this case on this basis so long as the existence of the warning is in dispute. But in order to avoid the need to decide the question later, I hold that even if there was a warning on the lighter, reckless indifference may yet be proved. On a motion to dismiss, a disclaimer is not conclusive of good intent.

Since the count of willful and wanton conduct survives, and since it is an intentional tort, *Citizens Ins. Co., id., Vining* does not bar the cause. In fact, *Vining* holds that comparative negligence is inapplicable where a defendant commits an intentional tort, not that comparative negligence did away with the cause of action for willful and wanton conduct.[10] *Vining* does not support Bic's thesis.

Finding no controlling cases to the contrary, I hold that a cause of action for willful and wanton conduct can be alleged in Michigan product-liability actions. The cause was properly alleged here. Bic's motion to dismiss the "reckless and wanton" count is DENIED.

### 2. *Summary Judgment*

As the Michigan Supreme Court has often noted, "[I]t is most difficult to determine, in a particular case, where negligence ends and willful and wanton misconduct begins. ... [Thus,] summary judgment is almost always inappropriate in this type of case." *Burnett*, 414 Mich. at 477, 326 N.W.2d 810. This caution is appropriate in the case at hand, because the negligence claim stands.

*Burnett* centers upon a defendant's motion for summary judgment as to willful

and wanton misconduct. The court reversed in favor of the plaintiff, holding that sufficient facts were alleged to create a genuine issue as to each of the three elements of a claim for willful and wanton misconduct as stated by *Gibbard, id.*: (1) defendant has knowledge of a situation requiring the exercise of ordinary care and diligence to avoid injury to another; (2) defendant has the ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; and (3) the omission of the use of such care and diligence to avert the threatened danger when, to the ordinary mind, it must be apparent that the result is likely to prove disastrous to another. *Burnett*, 414 Mich. at 455–56, 326 N.W.2d 810.

The warning, had it existed, would not dissolve any genuine issue of material fact. It is still possible for the evidence to show willful and wanton conduct. If so, the jury may find the warning to have been inadequate or even irrelevant to the question of bad design.

I hold that the Bondies pleaded sufficient facts to allow the willful and wanton issue to go to trial. Moreover, the Bondies present evidence that Bic had knowledge of the danger, having previously been sued for similar injuries. Also, Bic's internal documents and the existence of government documents outlining the dangers suggest notice. In the alternative lighter design, Bic had the means possibly to avoid harm. Whether those means were sufficiently "at hand" will be a jury question, as will the question of whether, to the ordinary mind, it was apparent that omission to provide this alternative design would prove disastrous.

Therefore, Bic's request for summary judgment on the "reckless and wanton" count is DENIED.

### D. Consumer Product Safety Act

#### 1. *Dismissal*

The Bondies assert a claim under the Consumer Product Safety Act ("CPSA"),

---

**10.** Presumably, in citing *Vining*, Bic relies on its own argument that "reckless and wanton" conduct is not a cause of action, in order to reason

that the Bondies have not alleged an intentional tort.

15 U.S.C. §§ 2051, *et seq.*, by way of the Poison Prevention Packaging Act ("PPPA"), 15 U.S.C. §§ 1471, *et seq.*, and/or the regulations promulgated thereunder.[11] The Bondies say that a cigarette lighter is a "product" under CPSA's definition. *See* 15 U.S.C. § 2052(a)(1). They say that under CPSA, it is unlawful to manufacture, sell, or distribute lighters that are not "in conformity with an applicable consumer product safety standard under this chapter." *See* 15 U.S.C. § 2068(a)(1). The PPPA regulatory rules are standards within CPSA's contemplation, since CPSA gave the Consumer Product Safety Commission authority for PPPA rulemaking and enforcement. 15 U.S.C. § 2079. Thus, the argument goes, since the lighters violate PPPA regulations, they violate CPSA, providing the Bondies with a private right of action under 15 U.S.C. § 2072.

Bic moves to dismiss, arguing that PPPA does not mandate child-resistancy requirements for butane lighters. Bic says that first, lighters do not fall within PPPA's definition of a "package" as the "immediate container or wrapping" for household substances, 15 U.S.C. § 1471(3). Lighters are not a "package" for butane itself; rather they are a machine for converting butane into energy, of which butane is merely a part. It dispenses fire, not butane. Moreover, the legislative intent of PPPA was to prevent accidental poisoning, not other accidental injury.

The Bondies allege that the lighter is subject to PPPA regulations, because it is a package for butane. They cite a memorandum from the Consumer Product Safety Commission's general counsel, which addresses the issue whether the Commission has rulemaking authority with respect to lighter design. The general counsel opines that "The butane in the lighters meets PPPA's definition of 'household substance' and the lighter itself, as immediate container of the butane probably would be a 'package' under the PPPA," and thereby concludes that PPPA might be a basis for rulemaking. *Memorandum from Daniel*

*R. Levinson, et al. to Dr. Leonard DeFiore, et al.* at 2 (May 29, 1985) (Plaintiff's Answer to Defendant's Renewed Motion for Summary Judgment, Exhibit "A"). The Bondies urge that the plain language of PPPA applies not only to ingestion, but to "handling" as well. 15 U.S.C. § 1472(a)(1).

██ I need not reach the issue of legislative intent, because I hold that a lighter is not a package for butane, and thus that PPPA does not apply. Hence, there is also no need to address Bic's alternative argument that PPPA is not self-executing, and that therefore PPPA cannot apply because the child-resistancy standard for liquid petroleum fuel promulgated by the Consumer Product Safety Commission pursuant to PPPA, does not extend to butane fuel or lighters, and that the Consumer Product Safety Commission has not yet promulgated a child-resistancy standard for such.

### 2. *Summary Judgment*

Since the CPSA claims are dismissed, summary judgment is DENIED as moot.

### E. Exemplary Damages
#### 1. *Dismissal*

Exemplary damages are available where willful and wanton misconduct exists.

██ Bic notes that Michigan tort law allows exemplary damages not to punish, but only as an element of compensatory damages where actual damages are not provable but mental injury exists, *citing Eide v. Kelsey–Hayes Co.*, 431 Mich. 26, 427 N.W.2d 488, 498 (1988), and *Veselenak v. Smith*, 414 Mich. 567, 575, 327 N.W.2d 261 (1982). Therefore, Bic reasons, double recovery could result here, since the Bondies might be compensated for mental distress as an element of their regular damages.

The Bondies reply that despite *Veselenak*, actual damages for injured feelings and exemplary (but still compensatory) damages for incremental injury to feelings due to outrage caused by defendant's malice are available, *citing Peisner v. Detroit Free Press*, 421 Mich. 125, 136–37, 364

---

**11.** In the Bondies' response to Bic's motion, they concede that Bic's lighters are exempt from the labeling requirements of the Federal Hazardous Substances Act, 15 U.S.C. § 1261(p)(1)(J).

N.W.2d 600 (1984) (libel action; incremental injury possible only if publisher fails to retract upon request). Plaintiff then cites a number of intentional tort cases (no product liability cases) in which the Michigan Court of Appeals upheld exemplary damages.

Despite the sparse guidance of Michigan cases, I agree with the Bondies, provided the proofs are forthcoming. The Bondies have alleged an intentional tort; namely, willful and wanton misconduct. Bic's concerns can be assuaged by appropriate jury instructions or a directed verdict, if need be.

### 2. *Summary Judgment*

Damages have been properly alleged. Summary judgment on the exemplary damages count is DENIED.

### III. *Order*

I ORDER that Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART, consistent with the foregoing opinion.