**Beverly RAINES, Personal Representative of the Estate of Kent Lanell Raines, Deceased, Plaintiffs,**

v.

**COLT INDUSTRIES, INC., a Pennsylvania corporation, and Nathaniel Davis, a Michigan resident, jointly and severally, Defendants.**

**No. 90–CV–70391–DT.**

United States District Court,
E.D. Michigan, S.D.

March 4, 1991.

Francis A. Amicone, Michael T. Materna, Fred A. Custer, Southfield, Mich., for plaintiffs.

John E.S. Scott, Richard L. Caretti, Patricia C. Mallon, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., James P. Dorr, Steven E. Danekas, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for Colt Industries.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, United States District Judge.

### I. INTRODUCTION

This is a products liability case in which plaintiff seeks monetary compensation for the death of her decedent. In her complaint, plaintiff avers three counts. Count I outlines plaintiff's claim that Colt Industries ("defendant")[1] was negligent in designing and manufacturing its Huntsman semi-automatic pistol (the "gun") and that it failed to warn users of the gun's dangerous propensities. Count II includes allegations that defendant breached expressed and/or implied warranties regarding the merchantability, fitness and safety of the gun and that the gun was expressly warranted to be reasonably safe for its users. Count III contains averments regarding plaintiff's claim for "breach of implied warranty in tort" as to defendant. In their briefs, both plaintiff and defendant acknowledge and insist that this action rests in tort, notwithstanding plaintiff's vague contract averments in the complaint.

This matter now comes before the Court on defendant's Fed.R.Civ.P. 56 motion for summary judgment. Plaintiff has filed a response brief. Both parties have fully briefed the relevant issues, and pursuant to E.D.Mich. Local R. 17(l) the Court addresses the motion without entertaining oral argument.

Upon review of the motion, briefs and file in this case, the Court concludes that any tort duty of care owed by defendant was obviated by the open and obvious dangers associated with the use of its product, and that any act or omission by defendant was not the proximate cause of plaintiff's injuries. For these reasons, the Court grants defendant's motion for summary judgment.

### II. BACKGROUND

The parties do not dispute the operative facts in this case. Nathaniel Davis ("Davis") shot and killed Kent Raines ("Raines") when Davis held Raines' loaded gun, which was manufactured by defendant, aimed it at Raines, engaged the firing mechanism, and discharged a bullet that fatally struck Raines in the back of the head. Davis and Raines were both minors when the shooting occurred.

Plaintiff, Beverly Raines, is the personal representative of the estate of her son, Kent Lanell Raines. Defendant is the manufacturer of the gun. Nathaniel Davis, a friend of the deceased, fired the fatal shot.

Davis' uncontroverted witness statement, recorded and prepared by the Detroit Police Department, provides a detailed account of the events leading up to the fatal and tragic shooting.

Raines brought his gun with him as he visited Davis at Davis' house. Raines gathered some "little kids" from the neighborhood and took them into Davis' backyard, where Raines started shooting the gun. After a while, Davis entered the backyard and took the gun from Raines because he thought the police would arrive if Raines continued shooting the gun.

At this point, Davis removed the magazine (also known as, and hereinafter referred to as, a "clip"). Davis also peered into the firing chamber. Upon Raines' request, Davis loaded the gun. After loading the gun, Davis reinserted the clip. The relevant portion of the witness statement regarding the examination of the firing

---

1. Although Nathaniel Davis was named as a defendant, he was never served and was, therefore, dismissed from this case. As a result, defendant-Colt represents the only defendant in this case.

chamber, the loading of the gun, and the reinsertion of the clip reads as follows:

> I took the clip out the gun. I opened the chamber and looked in it and [Raines] asked me to load the gun which I did. I then put the clip back in the gun and I stuck the gun in the holster and handed the gun to [Raines].

At this point, Raines and Davis walked across the street to a neighbor's house to discuss the possibility of selling cocaine. Raines handed Davis a bag of cocaine, but Davis returned it. Raines then tossed the gun to the ground and Davis and Raines started "pushing each other around and playing."

Raines later ran toward the gun, but Davis pushed him out of the way. Soon thereafter, Raines, with his back to Davis, took some money out of his pocket and began counting it. Intending to scare Raines, Davis picked up the gun, removed it from the holster, removed the clip from the gun, and pointed the gun at the back of Raines' head, waiting for Raines to turn around. Because Raines did not turn around, Davis thought he would scare him by "clicking" the gun.

Davis pulled the trigger and the gun discharged, firing a bullet that fatally struck Raines in the back of the head. When asked why he was trying to scare Raines, Davis replied that "we were playing and he has done that with me before." According to Davis' witness statement, Raines and Davis had been playing with the gun for two days. Police arrested Davis at the scene, and he was later charged as a juvenile for careless use of a firearm. Davis claims that he didn't know the gun was loaded because after he took the clip out, he thought the gun was "empty."

The gun has a 10-cartridge clip that is inserted into the gun for loading. Because the firing chamber of the gun may also be loaded with one cartridge, the gun has an 11-cartridge capacity. The police recovered the pistol and the clip at the scene of the shooting. Laboratory analysis of the clip revealed that it contained 10 cartridges.

## III. STANDARD OF REVIEW

■ Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.*, 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Ind.*, 806 F.2d 673, 675 (6th Cir.1986). Where the non-moving party has failed to present evidence on an essential element of its case, it has failed to meet its burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at

2552–53; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)).

## IV. THE PARTIES' CONTENTIONS

Plaintiff filed this products liability suit against defendant under theories of negligence and breach of warranty. Plaintiff argues that defendant's gun was defective because it lacked a magazine or clip disconnect safety device that would render the gun incapable of being fired after the clip has been removed.

Defendant argues that the open and obvious rule obviates any duty that defendant owed to plaintiff. Defendant also argues that the gun lacked a defect. Lastly, defendant argues that there is no causal link between the design and manufacture of the gun and Raines' death. Because the Court finds that Michigan's open and obvious rule is a defense to this action and that defendant's actions did not proximately cause plaintiff's alleged injuries, the Court need not consider defendant's other claim.

## V. ANALYSIS

### A. Applicable State Law

"Actionable negligence presupposes the existence of a legal relationship—in other words, a duty." *Clark v. Dalman*, 379 Mich. 251, 150 N.W.2d 755 (1967). Such is true in products liability actions. *Glittenberg v. Doughboy Recreational Industries, Inc.*, 436 Mich. 673, 462 N.W.2d 348 (1990). A prima facie case in a products liability action requires the plaintiff to demonstrate that the defendant manufacturer owed the plaintiff a duty of care. The question of whether a duty exists is a legal question to be decided by the court. *Glittenberg*, 436 Mich. at 682–83, 462 N.W.2d 348 (quoting *Smith v. Allendale Mutual Ins. Co.*, 410 Mich. 685, 713–15, 303 N.W.2d 702 (1981)). In some states, an open and obvious danger associated with

the use of a product may obviate the manufacturer's tort duty to warn and/or protect.

The vitality of the open and obvious rule in Michigan appears to be in question. In *Fisher v. Johnson Milk Co.*, 383 Mich. 158, 174 N.W.2d 752 (1970), a failure to warn and design defect case, the Michigan Supreme Court held that "[t]here is no duty to warn or protect against dangers obvious to all." 383 Mich. at 160, 174 N.W.2d 752 (citing *Jamieson v. Woodward & Lothrop*, 247 F.2d 23 (D.C.Cir.1957)).

However, in *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 326 N.W.2d 372 (1982), the Michigan Supreme Court declined to apply *Fisher* and noted that

[the Michigan] Court of Appeals has essentially limited the language in our decision in *Fisher* by the fact that *Fisher* involved a simple product or tool. *Coger v. Mackinaw Products Co.*, 48 Mich.App. 113; 210 N.W. 2d 124 (1953); *Byrnes v. Economic Machinery Co.*, 41 Mich.App. 192; 200 N.W. 2d 104 (1972); see, also, *Jennings v. Tamaker Corp.*, 42 Mich. App. 310; 201 N.W. 2d 654 (1972). We believe that such a limitation is proper. Obvious risks may be unreasonable risks, and there is no justification for departing from general negligence and breach of implied warranty principles merely because the dangers are patent.

This is not to say that the obviousness of the danger is irrelevant. As in *Fisher,* the obviousness of the risks that inhere in some simple tools or products is a factor contributing to the conclusion that such products are not unreasonably dangerous. The test, however, is not whether the risks are obvious, but whether the risks were unreasonable in light of the foreseeable injuries. [*Id.,* 414 Mich. at p. 425, 326 N.W.2d 372.]

In *Glittenberg*, the Michigan Supreme Court was faced squarely with the issue of whether *Owens* repudiated the open and obvious rule first articulated in *Fisher.* Six Justices were split evenly and one Justice concurred only in the result (i.e. remand). Consequently, the question was left unresolved.

■ After examining *Fisher, Owens, Glittenberg* and *Antcliff v. State Employees Credit Union,* 414 Mich. 624, 327 N.W.2d 814 (1982), this Court concurs with Justice Griffin's assessment and characterization of Michigan law in *Glittenberg.* Thus, in accordance with Justice Griffin's opinion, this Court holds that under Michigan law, a manufacturer has no duty to warn of or protect against known or obvious dangers associated with the use of a simple tool.

### B. The Open and Obvious Rule

■ The manufacturer is under no duty "to render a machine or other article more safe as long as the danger to be avoided is obvious and patent to all." *Glittenberg,* 436 Mich. at 686, 462 N.W.2d 348 (J. Griffin) (quoting *Fisher,* 383 Mich. at 163, 174 N.W.2d 752). The open and obvious danger rule applies to cases involving "simple tools" and remains a broadly accepted principle of products liability law. *Glittenberg,* 436 Mich. at 685, 690, 462 N.W.2d 348 (J. Griffin).

As noted above, in Michigan, *Fisher v. Johnson Milk Company, Inc.,* 383 Mich. 158, 174 N.W.2d 752 (1970) stands as the seminal case regarding the operation of the open and obvious rule. *Fisher* holds that there is "no duty to warn or protect against dangers obvious to all." 383 Mich. at 160, 174 N.W.2d 752 (citations omitted). The *Fisher* court indicated that

> There are ... on the market vast numbers of potentially dangerous products as to which the manufacturer owes no duty of warning or other protection. The law does not require that an article be accident-proof or incapable of doing harm. It would be totally unreasonable to require that a manufacturer warn or protect against every injury which may ensue from mishap and the use of his product.... A hammer is not a defective design because it may hurt the user if it slips. A manufacturer cannot manufacture a knife that will not cut or a hammer that will not mash a thumb or a stove that will not burn a finger. The law does not require him to warn of such common dangers....

*Fisher,* 383 Mich. at 161, 174 N.W.2d 752 (quoting *Jamieson v. Woodward & Lothrop,* 247 F.2d 23, 35 (D.C.Cir.1957)).

■ Michigan courts have defined an "open and obvious" danger as a condition that would ordinarily be observed and the danger of which would ordinarily be appreciated by those who would be expected to use the product. *Glittenberg,* 436 Mich. at 695, 462 N.W.2d 348 (J. Griffin) (quoting Prosser & Keeton, Torts (5th ed.), § 96, pp. 686–87). Furthermore, an open and obvious danger is determined by an objective standard; that is, an open and obvious danger is one of which a reasonable user should know:

> [t]he "open and obvious danger" rule is not dependent on the subjective knowledge of a particular user. To adopt a requirement that persons voluntarily confronting open and obvious dangers must also be subjectively aware of each and every potential consequence of their action would be to effectively extinguish the doctrine itself.

*Glittenberg,* 436 Mich. at 696, 462 N.W.2d 348 (J. Griffin).

In sum, and in relation to the instant case, the open and obvious danger rule obviates defendant's duty of care to plaintiff if (1) the defendant's product (i.e. the gun) is a "simple tool," and (2) the dangers of the gun were open and obvious to a reasonable and expected user of the gun. Additionally, in reaching this determination, Davis' subjective beliefs regarding the dangers posed by the gun are irrelevant and thus inconsequential.

#### 1. Simple Tool

■ As mentioned above, the open and obvious rule applies in cases involving "simple," as opposed to complex, products. Michigan case law does not provide a clear test for determining the simplicity or complexity of a product. The case law, however, provides considerable guidance with respect to such a determination.

In *Coger v. Mackinaw Products Co.,* 48 Mich.App. 113, 210 N.W.2d 124 (1973), the court concluded that a mechanized log split-

ter powered by a noisy gasoline engine and requiring two persons to operate it was a complex product. In *Jennings v. Tamaker Corp.*, 42 Mich.App. 310, 201 N.W.2d 654 (1972), the court found that a large mechanical baling machine presents a complex product for purposes of assessing tort liability. Also, in *Byrnes v. Economic Machinery Co.*, 41 Mich.App. 192, 200 N.W.2d 104 (1972), the court decided that an elaborate mechanical, automated bottle-labelling machine, requiring continuous maintenance, was a complex product for purposes of applying the open and obvious danger rule. Although the court made fact specific findings in each case, some general and guiding principles can be extracted from the cases.

First, generally, complex products are very mechanized, thus eliminating the user's control over the product. Second, complex products have a tendency to require a method of operation that exposes the user or operator to injury. In *Jennings*, proper operation of the baling machine forced the user to place himself in close proximity to moving parts and, in fact, to operate the machine within the area of moving parts that were capable of causing serious injury. In *Coger*, the users of the log splitter often needed to hold logs in position, causing their hands to be placed dangerously close to the sharpened cutting wedge. And in *Byrnes*, routine and continuous maintenance of the bottle-labelling machine forced the user to directly service and contact complex machinery capable of producing serious injury. Simple products differ markedly.

The Michigan courts have categorized certain products as simple when one or both of the following conditions exist: (1) the products are not highly mechanized, thus allowing the users to maintain control over the products; (2) the intended use of the products does not place the users in obviously dangerous positions. For example the courts have indicated that hammers, knives, gas stoves, axes, buzz saws, propeller driven airplanes and trampolines are all simple products and differ from complex products in the manner in which

they are operated and/or in the relatively simplistic nature of their design.

In the instant case, the gun involved in producing the injury is a "simple tool" to which the open and obvious danger rule applies. The gun is not highly mechanized and is not power driven. It does not contain large, unwieldy parts that must be serviced and that cause severe injury upon mere contact. Moreover, the normal and intended operation of the gun does not place the user in a dangerous position—defendant intended that users fire the gun not at themselves or innocent individuals, but at sporting targets, at animals, or in the event of self defense, at other humans. Just as a manufacturer cannot produce a hammer that will not mash, or a stove that will not burn, it is also true that a manufacturer cannot produce a gun that will not fire a bullet when it is, in fact, loaded and when the firing mechanism is deliberately engaged.

### 2. Open and Obvious Danger

■ In the instant case, the dangers presented by the loaded gun were open and obvious to a reasonable and expected user. Because the cartridge remaining in the firing chamber was visible or was discernable by casual inspection, an individual who would ordinarily be expected to use the gun would know upon inspection that a cartridge remained in the firing chamber and was capable of being discharged. Thus, the Court concludes that a reasonable user would have recognized both the fact that the gun was loaded and the danger of firing the loaded gun at another person.

The observations in *Taylor v. Ridgewood*, 141 Ill.App.3d 780, 95 Ill.Dec. 895, 490 N.E.2d 987 (1986) reinforce the soundness of the Court's conclusion. In *Taylor*, the court was presented with a similar case:

> [The user] fully intended to perform the physical actions necessary to fire the weapon. He deliberately picked it up, inserted his finger through the trigger guard, pointed it at the head of [the decedent] and pulled the trigger. The

loaded revolver fired when [the shooter] pulled the trigger. This is precisely the operation of the product which, according to its function, is reasonably to be expected.... In short, it performed according to its design. Only a defective person would fail to realize the obvious dangers associated with these actions.... A loaded firearm must be considered dangerous.... It is an instrument of death. That is its primary function. Yet, only deliberative action will cause discharge. When properly handled, the gun can be safely used.

In the instant case, just as in *Taylor*, the shooter pointed and fired a loaded gun at an individual, resulting in the individual's death. Under these circumstances, the gun presents dangers that are open and obvious to a reasonable user.

Plaintiff argues that it was Davis' belief that the gun was unloaded or was incapable of being fired after he removed the clip.[2] But as noted in *Glittenberg*, the open and obvious danger rule does not depend on the subjective beliefs of the user. Thus, the fact that Davis subjectively thought the gun was unloaded or was incapable of being fired does not inhibit the operation of the open and obvious rule in this case and, therefore, does not bear on the outcome of this motion.

To summarize, the Court finds that the gun manufactured by defendant was a simple tool and that any duty that defendant owed to plaintiff was obviated by the open and obvious dangers associated with the use of the gun. Furthermore, the Court finds that Davis' subjective belief that the removal of the clip either rendered the gun incapable of firing or unloaded the gun is irrelevant for purposes of applying the open and obvious danger rule.

### C. Proximate Cause

■ An unforeseeable intervening cause breaks the chain of causation and constitutes a superseding cause that relieves the alleged tortfeasor of liability.

*McMillian v. Vliet*, 422 Mich. 570, 374 N.W.2d 679 (1985). The issue of foreseeability rests properly with the Court. *Trotter v. Hamill Mfg. Co.*, 143 Mich.App. 593, 372 N.W.2d 622 (1985) (citing *Fredericks v. General Motors Corp.*, 411 Mich. 712, 720, 311 N.W.2d 725 (1982)).

■ In the instant case, Davis' act of deliberately firing the gun was a superseding cause of plaintiff's injuries. The Court finds that it was not foreseeable that Davis would inspect the firing chamber—where a cartridge would be visible—load the gun, then withdraw the full clip and deliberately pull the trigger to discharge the fatal shot. Davis' actions become even less foreseeable when one considers that he, according to his own admissions, "played" with the gun for two days, had prior experience loading the gun, had prior experience inserting and removing the clip, and had previously witnessed the gun being fired. In other words, it is not foreseeable that a person with Davis' prior experience handling and manipulating the gun would intentionally fire it at another person. Therefore, because of Davis' unforeseeable and superseding act, defendant's negligence, if any, was not the proximate cause of plaintiff's injuries.

### VI.  CONCLUSION

Having concluded as a matter of law that the gun in this case was a simple tool and that the dangers presented by the gun were open and obvious, the Court finds that defendant did not owe plaintiff a duty of care. Furthermore, defendant's acts and/or omissions were not causally linked to plaintiff's injuries. Because no genuine issue of material fact exists and defendant is entitled to judgment as a matter of law, defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

### JUDGMENT

IT IS ORDERED AND ADJUDGED that this action is hereby DISMISSED pursuant

---

**2.** Davis admitted to inserting a cartridge in the firing chamber and to inserting a full clip. Hence, after he removed the full clip, he should have known that a cartridge remained in the firing chamber.

to the Memorandum Opinion and Order dated March 4, 1991.