### ORDER

Daniel Edwin **CARLSON** and Lori Carlson, individually, and Garfield Geyer, as Personal Representative of the Estates of Daniel Thomas Carlson, deceased, Alan Robert Carlson, deceased, and Adam John Carlson, deceased, Plaintiffs,

v.

**BIC CORPORATION, Defendant.**

No. 90–CV–10006–BC.

United States District Court, E.D. Michigan, N.D.

Dec. 17, 1993.

458

to reconsider and a response thereto was filed by defendant on March 19, 1993. For the reasons stated herein,

IT IS ORDERED that the motion to reconsider is GRANTED as to plaintiff's design defect claim, and DENIED as to all other claims.

IT IS FURTHER ORDERED that the Court's earlier entry of judgment in favor of defendant is hereby VACATED.

## II. BACKGROUND FACTS

This is a products liability action brought against Bic, the manufacturer of a disposable, butane lighter which was involved in a house fire that occurred on January 16, 1987, in Cheboygan, Michigan. The facts surrounding the incident are not in dispute. During the early morning of January 16, 1987, one of Daniel and Lori Carlson's three children obtained a Bic lighter from the top of the refrigerator located in their mobile home. A fire started and the parents, who were themselves able to escape, were not able to save the children. All three children, ages three through six, perished in the fire. The fire marshall concluded that a Bic lighter, found under the body of one of the children, was the ignition source of the fire.

Mr. and Mrs. Carlson, as well as the representatives of the three children, brought an action against Bic alleging: negligence (breach of duty to warn and design defect); breach of implied warranty; breach of express warranty; reckless and wanton misconduct; and violation of the Consumer Product Safety Act. Bic subsequently moved for summary judgment on all counts. This Court issued an order granting the motion in its entirety and dismissing this case. Plaintiffs subsequently filed a timely motion for reconsideration of this Court's order.

Philip Vestevich, Bloomfield Hills, MI, for plaintiffs.

Thomas M. Peters, Detroit, MI, for defendant.

*MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR RECONSIDERATION*

CLELAND, District Judge.

## I. INTRODUCTION

In April of 1993, this Court issued an order granting defendant's motion for summary judgment on all counts and an order dismissing this case. Plaintiffs timely filed a motion

## III. STANDARD OF REVIEW

The applicable standard for motions of summary judgment is clear. Under Federal Rule of Civil Procedure 56, to grant a motion for summary judgment, the court must find that the pleadings, together with the depositions, interrogatories and affidavits on file, establish that there is no *genuine* issue of

material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56 (emphasis added). A party seeking summary judgment bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party must thereafter produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986).

Although a plaintiff is entitled to a review of the evidence in the light most favorable to him or her, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Rule requires the non-moving party to come forward with "specific facts showing that there is a *genuine* issue for trial." Fed. R.Civ.P. 56(e) (emphasis added).

Motions to alter or amend a judgment or for reconsideration of that judgment, must be served not later than 10 days after entry of the judgment. The grounds under which such a motion will be granted are narrow:

> Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. *The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof*

Local Rule 7.1(h)(3) (emphasis added).

## IV. DISCUSSION

### NEGLIGENCE—DUTY TO WARN

■ Plaintiffs allege that defendant Bic was negligent in failing to warn of the damages attendant upon a child's foreseeable misuse of its lighter. Because this case is based on diversity jurisdiction Michigan law applies to the state law claims. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In products liability cases, the duty to warn in Michigan has been characterized as an exception to the general rule of non-rescue, imposing on sellers an obligation to transmit safety-related information if they "know or should know that the buyer or user is unaware of that information." *Glittenberg v. Doughboy Recreational Industries*, 441 Mich. 379, 386, 491 N.W.2d 208 (1992). The question of "duty" is a matter of law, to be decided by the court. *Id.* (citing *Antcliff v. State Employees Credit Union*, 414 Mich. 624, 640, 327 N.W.2d 814 (1982)); *Smith v. Allendale Mut. Ins. Co.*, 410 Mich. 685, 713–15, 303 N.W.2d 702 (1981).

The Michigan Supreme Court recently held in *Glittenberg* that:

> [T]he manufacturer of a simple product has no duty to warn of the product's potentially dangerous conditions or characteristics that are readily apparent or visible upon casual inspection and reasonably expected to be recognized by the average user of ordinary intelligence

*Glittenberg*, 441 Mich. at 385, 491 N.W.2d 208.

■ It is well settled that manufacturers are not insurers of the products that they produce. *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 682–83, 365 N.W.2d 176 (1984). Thus the rationale behind the holding in *Glittenberg* is straightforward: where the condition that is alleged to cause the harm is entirely revealed by casual observation of a simple product in normal use, a duty to warn would serve no fault-based purpose. *Glittenberg*, 441 Mich. at 397, 491 N.W.2d 208 (citing *Prentis v. Yale Manufacturing*, 421 Mich. 670, 365 N.W.2d 176 (1984)).

The leading case regarding "simple tools" is *Jamieson v. Woodward & Lothrop*, 247 F.2d 23 (D.C.Cir.1957), *cert. denied*, 355 U.S. 855, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957), where the Court explained:

> A manufacturer cannot manufacture a knife that will not cut or a hammer that

will not mash a thumb or a stove that will not burn a finger. The law does not require [manufacturers] to warn of such common dangers

*Id.* at 26.

Michigan courts have adopted this standard as well:

There are ... on the market vast numbers of potentially dangerous products as to which the manufacturer owes no duty of warning or other protection. The law does not require that an article be accident-proof or incapable of doing harm. It would be totally unreasonable to require that a manufacturer warn or protect against every injury which may ensue from mishap and the use of his product....

*Fisher v. Johnson Milk Co.*, 383 Mich. 158, 160, 174 N.W.2d 752 (1970) (citations omitted).

In short, the "open and obvious" rule obviates defendant's duty to warn plaintiff if: (1) the defendant's product (i.e. the disposable lighter) is a "simple tool" and (2) the dangers of using the lighter were "open and obvious" to a reasonable and expected user. *Raines v. Colt Industries, Inc.*, 757 F.Supp. 819, 825 (E.D.Mich.1991).

 The question of obviousness in terms of the product's character is to be determined objectively. *Glittenberg*, 441 Mich. at 392, 491 N.W.2d 208. The *Glittenberg* Court noted that the focus is on "the typical user's perception and knowledge." *Id.* A court must determine whether the condition that creates the danger associated with the product's use (i.e. the flame which is produced by a "roll and press" operation) is "fully apparent, widely known, commonly recognized and anticipated by the *ordinary user*." *Id.* (citation omitted) (emphasis added).

 Plaintiffs in the instant case do not contend that young children are the typical or ordinary users of defendant's lighters, but merely that they are "foreseeable misusers."

Therefore, the children's subjective knowledge (or lack thereof) of the harm that the lighter could cause is irrelevant to the question of whether the danger was "open and obvious." *Glittenberg*, 441 Mich. at 393, 491 N.W.2d 208. This Court holds that when the inquiry is properly focused on the typical users of disposable lighters (i.e. adults) there can be no dispute that the danger presented by a disposable lighter (i.e. that fire will be produced when the roller is depressed) is "open and obvious."

In addition, this Court finds that the hand held lighter in question is a "simple tool." In determining that above ground pools were "simple tools" for the purpose of analyzing a defendant's duty to warn, the court in *Glittenberg* noted that "[n]o one can mistake them for other than what they are, i.e. large containers of water that sit on the ground, all characteristics and features of which are readily apparent or easily discernible upon casual inspection." *Glittenberg*, 441 Mich. at 400, 491 N.W.2d 208.

The disposable lighter in the instant case falls within the criteria relied upon in *Glittenberg*. There is no claim that defendant's disposable lighter possesses characteristics and features which are not readily apparent or easily discernable upon casual inspection. Indeed, it would be difficult to conceive of a device with more universally known or readily apparent characteristics. In addition, unlike highly mechanized and difficult to operate products that Michigan courts have deemed to be "complex,"[1] the defendant's hand-held lighter merely requires the user to spin a small wheel with the thumb while simultaneously depressing a button to emit fuel. This "roll and press" operation consists of a rudimentary design which cannot be characterized as being complex or highly mechanized. In short this Court finds that defendant's hand-held lighter is a "simple tool."

Because defendant's product is a "simple tool" whose potentially dangerous conditions

---

1. *See Coger v. Mackinaw Products Co.*, 48 Mich. App. 113, 210 N.W.2d 124 (1973) (highly mechanized log-splitter powered by a gasoline engine and requiring two persons to operate held to be a complex product); *Jennings v. Tamaker Corp.*, 42 Mich.App. 310, 201 N.W.2d 654 (1972) (large mechanical baling machine was a complex product); and *Byrnes v. Economic Machinery Co.*, 41 Mich.App. 192, 200 N.W.2d 104 (1972) (elaborate automated bottle-labelling machine which required continuous maintenance deemed to be a complex product).

are "open and obvious" to the typical user, this Court holds that, as a matter of law, defendant had no duty to warn plaintiffs of the lighter's potential danger. In their motion for reconsideration, plaintiffs have failed to point to a "palpable defect" by which the Court has been misled. Local Rule 7.1(h)(3). Accordingly, the Court denies plaintiffs' motion to reconsider it prior decision granting summary judgement on the duty to warn claim.

## NEGLIGENCE—DESIGN DEFECT

■ Plaintiffs also claim that Bic was negligent because its lighter was defectively designed. Under Michigan law, a manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury. *Prentis v. Yale Manufacturing Co.,* 421 Mich. 670, 693, 365 N.W.2d 176 (1984) (citing *Owens v. Allis–Chalmers Corp,* 414 Mich. 413, 425, 326 N.W.2d 372 (1982)). If the manufacturer fails to use reasonable care in the face of such duty, it may be answerable for its breach in a negligence action. *Elsasser v. American Motors Corp.,* 81 Mich.App. 379, 384, 265 N.W.2d 339 (1978). In support of its position that, as a matter of law, it owed no duty to the plaintiffs, Bic relies primarily on two federal cases applying Michigan law and a recently decided case by the Michigan Court of Appeals.[2] These cases in turn rely on the Michigan Supreme Court's holding in *Fisher v. Johnson Milk Co.,* 383 Mich. 158, 174 N.W.2d 752 (1970). Specifically, defendant cites *Raines v. Colt Industries, Inc.,* 757 F.Supp. 819 (E.D.Mich.1991) and *Kirk v. Hanes Corp. of North Carolina,* 771 F.Supp. 856 (E.D.Mich. 1991).

*Raines* was an action brought by a mother whose son was killed when his friend discharged a semi-automatic pistol. The plaintiff alleged, *inter alia,* that the gun was defectively designed because it lacked a magazine or clip disconnect safety device that would render it incapable of being fired after the clip had been removed. *Raines,* 757 F.Supp. at 823. The court began by focusing on a defendant manufacturer's duty:

> A prima facie case in a product liability action requires the plaintiff to demonstrate that the defendant manufacturer owed the plaintiff a duty of care. The question of whether a duty exists is a legal question to be decided by the court

*Id.* at 823.

In analyzing the duty issue in a design defect case the court relied on the analysis set forth in *Fisher v. Johnson Milk Co.,* 383 Mich. 158, 174 N.W.2d 752 (1970), which held that:

> There are . . . on the market vast numbers of potentially dangerous products as to which the manufacturer *owes no duty of warning or other protection.* The law does not require that an article be accident-proof or incapable of doing harm. It would be totally unreasonable to require that a manufacturer *warn or protect* against every injury which may ensue from mishap and the use of his product. . . . A hammer is not a defective design because it may hurt the user if it slips. A manufacturer cannot manufacture a knife that will not cut or a hammer that will not mash a thumb or a stove that will not burn a finger. The law does not require him to warn of common dangers. . . .

*Raines,* 757 F.Supp. at 824 (quoting *Fisher v. Johnson Milk Company, Inc.,* 383 Mich. 158, 161, 174 N.W.2d 752 (1970)) (citation omitted) (emphasis added). In granting the defendant manufacturer's motion for summary judgment the *Raines* court held that, "under Michigan law, a manufacturer has *no duty to warn or protect* against known or obvious dangers associated with the use of a simple

---

**2.** Defendant submitted for this Court's review *Adams v. Perry Furniture Co.,* 198 Mich.App. 1, 497 N.W.2d 514 (1993). After considering the identical issue that this Court faces in the instant case the *Adams* court held, *inter alia,* that summary disposition was proper in favor of defendant Bic under a theory that its lighter—which allegedly caused a child-play fire killing four minor children—was defectively designed. The court relied heavily on the analysis set forth in *Kirk v. Hanes Corp. of North Carolina,* 771 F.Supp. 856 (E.D.Mich.1991) and *Glittenberg v. Doughboy Recreational Industries,* 441 Mich. 379, 491 N.W.2d 208 (1992). Both *Kirk* and *Glittenberg* are discussed thoroughly, *infra.* Accordingly, the Michigan Court of Appeals' holding in *Adams,* although recent and on point, will not be separately analyzed.

tool." *Raines*, 757 F.Supp. at 824 (emphasis added).

In a recent case involving a disposable, hand-held lighter the court in *Kirk v. Hanes Corporation of North Carolina*, 771 F.Supp. 856 (E.D.Mich.1991), similarly granted summary judgment to the defendant manufacturer (Bic). Relying on the holdings of *Fisher* and *Raines* the *Kirk* court held that, because the product was a "simple tool"—whose dangers were "open and obvious"—the manufacturer did not, as a matter of law, owe the plaintiff a duty of care. *Kirk v. Hanes Corporation of North Carolina*, 771 F.Supp. 856, 860 (E.D.Mich.1991). Accordingly, the court held, Bic was entitled to summary judgment on plaintiff's design defect claim. *Id.*

■■ This Court believes that the court in *Fisher*, upon whose reasoning the two federal district courts in *Raines* and *Kirk*—as well as the Michigan Court of Appeals in *Adams*—relied, confused *duty to warn* analysis with *design defect* analysis. Accordingly, this Court respectfully elects not to follow the holdings of *Raines, Kirk* and *Adams*[3]. Specifically, the Michigan Supreme Court in *Fisher* held that a manufacturer has no duty "to warn *or protect* " against dangers obvious to all. *Fisher*, 383 Mich. at 161, 174 N.W.2d 752 (quotation omitted) (emphasis added). However, as the Michigan Supreme Court subsequently noted in *Owens v. Allis–Chalmers Corp.*, 414 Mich. 413, 424, 326 N.W.2d 372 (1982), *Fisher* relied in part on *Campo v. Scofield*, 301 N.Y. 468, 472, 95 N.E.2d 802 (1950), in which the court stated:

> If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands.... In other words, the manu-

facturer is under no duty to render a machine or other article 'more' safe as long the danger to be avoided is obvious and patent to all

The court's decision in *Campo*, however, was overruled in *Micallef v. Miehle Co., Div. of Miehle–Goss Dexter, Inc.*, 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976), where the New York Court of Appeals held that:

> [T]he bottom does not logically drop out of a negligence case against the maker when it is shown that the purchaser knew of the dangerous condition. Thus, if the product is a carrot-topping machine with exposed moving parts, or an electric clothes wringer dangerous to the limbs of the operator, and *if it would be feasible for the maker of the product to install a guard or a safety release, it should be a question for the jury whether reasonable care demanded such a precaution, though its absence is obvious.* Surely reasonable men might find here a great danger, even to one who knew the condition; and since it was so readily avoidable they might find the maker negligent

*Micallef v. Miehle Co., Div of Miehle–Goss Dexter, Inc.*, 39 N.Y.2d at 384, 384 N.Y.S.2d 115, 348 N.E.2d 571 (quoting 2 Harper & James, Torts, § 28.5) (emphasis added). This analysis was adopted by the Michigan Supreme Court in *Owens*, where the court determined that obviousness of the danger is not dispositive in a design defect case:

> As in *Fisher*, the obviousness of the risks that inhere in some simple tools or products is a *factor* contributing to the conclusion that such products are not unreasonably dangerous. *The test, however, is not whether the risks are obvious, but whether the risks were unreasonable in light of the foreseeable injuries*

---

**3.** An intermediate appellate court's judgment that announces a rule of law is a datum for ascertaining state law which should not be disregarded by a federal court unless it is convinced by other persuasive data that the state's highest court would decide otherwise. *See FL Aerospace v. Aetna Casualty and Sur. Co.*, 897 F.2d 214, 218 (6th Cir.1990) *cert. denied*, 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990) (quotation

omitted). Because this Court is convinced by other persuasive data (discussed thoroughly, *infra* ) that the Michigan Supreme Court would apply a different rule of law in deciding the design defect issue than did the Michigan Court of Appeals in *Adams v. Perry Furniture Co.*, 198 Mich.App. 1, 497 N.W.2d 514 (1993), it elects not to adopt *Adams'* interpretation of Michigan law.

*Owens,* 414 Mich. at 425, 326 N.W.2d 372 (emphasis added).

The Michigan Supreme Court recently reaffirmed this position in *Glittenberg* by noting that obviousness of danger is merely one factor in the analysis of whether a design is reasonable and admonishing courts not to confuse duty to warn analysis with design defect analysis:

> Warning analysis is not preferable to design defect analysis as an approach to products liability. That there may be limited situations when a product implicitly states its warning through the openness of the danger in normal use must not obscure the fact that the ultimate inquiry in products liability is the safety of the overall design. A warning is not a Band–Aid to cover a gaping wound, and a product is not safe simply because it carries a warning

*Glittenberg,* 441 Mich. at 397, 491 N.W.2d 208 (footnote omitted).

As noted, a manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury. *Prentis v. Yale Manufacturing Co.* 421 Mich. 670, 693, 365 N.W.2d 176 (1984); *Owens v. Allis–Chalmers Corp.,* 414 Mich. 413, 425, 326 N.W.2d 372 (1982); *Scott v. Allen Bradley Co.,* 139 Mich.App. 665, 670, 362 N.W.2d 734 (1984); *Reeves v. Cincinnati, Inc.,* 176 Mich.App. 181, 185, 439 N.W.2d 326 (1989). This duty applies to all injuries which are foreseeable, whether they occur to an intended user or a foreseeable misuser. *Glittenberg,* 441 Mich. at 394, 491 N.W.2d 208. As discussed more thoroughly, *infra,* hundreds of children each year are either injured or killed by fires caused by misuse of disposable, butane lighters identical to the one in the instant case. Bic doesn't deny plaintiffs' allegations that it is foreseeable that children will be injured by fires which emanate, albeit through misuse, from its disposable, butane lighters. Bic instead attempts to narrowly redefine the class to whom a duty is owed to include only *intended* users (i.e. adults) of its

lighters. This Court is unwilling to accept such a narrowing of the scope of the inquiry. It is undisputed that injury to children caused by lighter-ignited fires is foreseeable. Accordingly the Court holds that, as matter of law, Bic had a duty to design its lighters so as to eliminate any unreasonable risk of injury to children. *Cf. Adams v. Perry Furniture Co.,* 198 Mich.App. 1, 14, 497 N.W.2d 514 (1993) ("Plaintiff maintains that the [duty] issue is whether it was foreseeable to Bic that its lighters would be handled by children. We disagree.").

■ Having determined that Bic owed a "duty," the focus shifts to whether or not it was negligent. The factual inquiry demanded is whether, at the time it was manufactured, the disposable, butane lighter in the instant case was unreasonably dangerous (i.e. "defective") when it failed to include a child-resistant device. The Michigan courts have adopted a pure negligence, risk-utility test to give content to the term "defect" in design defect cases. *Prentis,* 421 Mich. at 691, 365 N.W.2d 176. The competing factors to be assessed under a risk-utility balancing test require the trier of fact to consider the alternatives and risks that the manufacturer faced and to determine whether, in light of these, the manufacturer exercised reasonable care in making the design choices that it made. *Id.* at 688, 365 N.W.2d 176. This test, which is merely a detailed version of Judge Learned Hand's negligence calculus (see *United States v. Carroll Towing Co.,* 159 F.2d 169, 173 (2nd Cir.1947)), deals solely with the element of breach—which is necessarily a question for the trier of fact.[4]

■ Even though the ultimate inquiry as to whether the lighter was unreasonably dangerous is exclusively within the recognized province of the trier of fact, the court must determine, as a preliminary matter, whether the issue should be submitted to the jury at all. *Prosser and Keeton on Torts,* § 37 (5th ed. 1984). In *Owens v. Allis–Chalmers*

---

4. This Court notes, but cannot agree with, the contrary conclusion reached by the court in *Bondie v. Bic Corp.,* 739 F.Supp. 346 (E.D.Mich. 1990). In *Bondie,* members of a family suffered injuries in a house fire started by an unsupervised three-year old child playing with a disposable Bic lighter. *Id.* at 347. The court applied the risk-utility balancing test adopted in *Prentis* to the element of *duty* and held that, as a matter of law, Bic had a duty to design a child-resistant lighter. *Id.* at 350.

*Corp.,* 414 Mich. 413, 425, 326 N.W.2d 372 (1982), the Michigan Supreme Court set forth the requisite proof needed to create a question of fact in a design defect case. *Owens* involved an accident with a forklift in which plaintiff's decedent was killed when the unit he was driving overturned. No mechanical problems were discovered, but plaintiff argued that the forklift was improperly designed because it failed to provide a driver restraint as standard equipment. *Owens,* 414 Mich. at 417, 326 N.W.2d 372. The trial court granted the defendant manufacturer's motion for a directed verdict on the basis that plaintiff had failed to establish an unreasonable risk of foreseeable injury.

In affirming the trial court's decision, the Michigan Supreme Court provided a basis for determining whether a manufacturer has been negligent. In evaluating the reasonableness of a manufacturer's design decision, the factors to be considered are: (1) the magnitude of the risks of injury involved, including the likelihood of the occurrence of the type of accident precipitating the need for the safety device and the severity of injuries sustainable from such an accident and (2) the reasonableness of the proposed alternative design and whether that device would have been effective as a reasonable means of minimizing the foreseeable risk of danger. *Reeves v. Cincinnati, Inc.,* 176 Mich.App. 181, 187–88, 439 N.W.2d 326 (1989); *see also* Ernest R. Bazzana et al., *Owens v. Allis–Chalmers: The Standard of Proof in a Design Defect Case,* Michigan Bar Journal, Feb. 1990, at 166 (citing *Owens,* 414 Mich. at 429, 326 N.W.2d 372). To show defective design, a plaintiff must produce sufficient evidence concerning these factors. Absent such evidence, a plaintiff has not presented a *prima facie* case and the defendant manufacturer is entitled to judgment (either by way of summary judgment or, as in *Owens,* by a directed verdict) as a matter of law.

In applying its two-part test to the facts presented by the plaintiff's expert, the court in *Owens* determined that plaintiff failed to present a *prima facie* case. In assessing the magnitude of the risks the court noted that, while there was evidence presented from which one could infer that the injuries resulting from being pinned under a forklift were *foreseeable,* there was no indication as to *how likely* it would be for such an injury to occur. *Owens,* 414 Mich. at 430, 326 N.W.2d 372. Accordingly, the court held that where the magnitude of the risks is uncertain—because it is dependent upon an unknown incidence of the specific injury in question—"an examination of the proposed alternative design must bear a *heavy burden* in determining whether the chosen design was unreasonably dangerous." *Id.* (*emphasis added*).

In assessing the "reasonableness of the proposed alternative design" the *Owens* court noted that there was no testimony concerning the effects of a cage (which plaintiff proffered as an alternative design) upon the driver's ability to perform his work. Nor was there any factual testimony concerning the safety of a operator in the cage if a rollover were to occur. Furthermore, no evidence was provided concerning the effects of the use of other restraints suggested by plaintiff as alternatives. *Id.* at 431, 326 N.W.2d 372.

With regard to the magnitude of the risks, plaintiffs in the instant case present significant evidence to indicate that the type of injury sustained was foreseeable. Data from the United States Consumer Product Safety Commission ("CPSC" or "Commission"), which Bic had in its possession prior to the fire, show that:

> Child play is … the major hazard associated with cigarette lighter fires. During 1980–1985 an average of 170 persons a year were estimated to have died in cigarette lighter fires. Of these, an estimated 120 died in fires started by children playing…. Most of the victims of child play fires were young children.
>
> . . . .
>
> The cigarette lighters were almost always disposable butane models

Plaintiffs' Response Exhibit N. In addition, plaintiffs have obtained a total of fifty-eight certified injury reports from the CPSC which identified Bic lighters in child play fires. Plaintiff's also present evidence to indicate that when the CPSC is able to identify the

lighter, it automatically sends a copy of the accident report to the manufacturer.

Compelling though it may be, this information standing alone precludes a calculation of the magnitude of the risks involved in selling disposable lighters that are not equipped with a child restraint. This is because the data, while providing evidence on the number of occurrences within a particular time frame (e.g. the total number of child play fires caused by disposable lighters within one year), does nothing to indicate the total number of possible outcomes (e.g. the total number of disposable lighters that had been produced or were in circulation during that same period, or the number of proper, adult-caused ignitions of lighters that could be expected during the relevant period). Absent any information about such figures, it is impossible to determine—or even to make an intelligent statement concerning—*how likely* the injuries were to occur.[5] Thus, despite evidence presented by plaintiffs that the type of harm was indisputably foreseeable, the magnitude of the risk (at the time this Court issued its order granting summary judgment to Bic) remained quite uncertain because it was contingent upon the unknown incidence of child lighter fires caused by disposable lighters.

Under these circumstances Michigan law dictates that, "an examination of the effects of any proposed alternative design must bear a *heavy burden* in determining whether the chosen design was unreasonably dangerous." *Owens*, 414 Mich. at 430, 326 N.W.2d 372 (emphasis added). The substance of the plaintiffs' case in this regard was this: by the third quarter of 1985, Bic had developed a child-resistant lighter with an "over and up" switch design. This design was intended to make it more difficult for children to operate the lighter. In their response to the original motion, however, plaintiffs had presented no evidence concerning the *acceptability* of this design to consumers of disposable lighters.

They presented no evidence of the *cost* of implementation and no evidence on the per unit price effect on individual lighters. In addition, they presented no evidence concerning the ability of other intended consumers (such as the disabled or the elderly) to get past the "child-proofing" and to operate the prototype, and no evidence of the *effectiveness* of the design after prolonged periods of use or exposure. Accordingly, this Court held that:

> Plaintiffs· have failed to present a prima facie case of "design defect" because they have not met the "heavy burden" of presenting compelling, empirical evidence of an alternative design

In their instant motion for reconsideration plaintiffs do not disagree with the Court's conclusion that they had not proffered significant evidence on the likelihood of injury or the feasibility of the proposed alternative design, but instead maintain that they were never put to the task by Bic to do so. This Court agrees. In the instant motion, plaintiffs have now proffered new evidence regarding the "likelihood" of the specific injury in question. Specifically, plaintiffs have presented additional evidence from the Consumer Products Safety Commission which shows that over 500 million disposable lighters are consumed annually in the U.S. and that each lighter provides one thousand to two thousand lights. The evidence also indicates that, during 1986–1988, an average of 8,100 fires per year were started by children playing with cigarette lighters. An average of 180 persons per year died in these fires and an additional 990 persons were injured. Of the 180 people who died each year, an estimated 140 were children less than five years old. On top of this number, there were 660 persons that were treated in hospital emergency rooms each year for injuries suffered in child play fires that were not attended by fire departments. The average annual cost of deaths, injuries, and property damage from

---

**5.** "Likelihood" is neither more nor less than "probability," and probability can be computed. The probability that an event will occur is the ratio of the number of outcomes in an exhaustive set of equally likely outcomes that produce a given event to the total number of outcomes. Webster's New Collegiate Dictionary 937 (9th ed.

1983). For example, when a six-sided die is rolled, the probability that a "three" will come up is 0.16: 1 chance in 6. In the instant case plaintiffs have presented no data on the total number of possible outcomes. Without knowing the denominator, it is impossible to determine the "ratio," i.e. the probability.

child-play fires is estimated to be approximately $310–375 million dollars (assuming a statistical value of life of 2 million dollars), or about .60–.75 per lighter sold. In addition, plaintiffs have offered evidence indicating that most (89%) accidental lighter fires are caused by children playing; that of all civilian deaths caused by accidental lighter fires, 82% are caused by children playing with lighters; that of all civilian injuries in accidental lighter fires, 85% are caused by children playing with lighters; and that of all property damage caused in accidental lighter fires, 91% is caused by children playing with lighters.

In addition to presenting additional evidence on the magnitude of the risks, plaintiffs have presented new evidence on the reasonableness of the proposed alternative design. Specifically, plaintiffs have now proffered significant evidence (unrebutted by Bic) indicating: the feasibility of the proposed alternative design at the time the present lighter was manufactured; its acceptability by regular adult lighter users as well as by elderly lighter users; and its relatively minor per unit cost to implement.

■ Based on the above information it is apparent that the magnitude of the risks is not, as this Court originally held (and as it was under the facts in *Owens* ), "quite uncertain." see *Owens*, 414 Mich. at 430, 326 N.W.2d 372. Furthermore, it cannot be gainsaid that plaintiffs have now offered compelling evidence on the reasonableness of the proposed alternative design. Failure to consider this evidence prior to ruling on defendant's motion for summary judgment constitutes a palpable defect by which this Court, through no fault of plaintiffs, was misled. Local Rule 7.1(h)(3). Even a cursory examination of the above evidence inescapably leads to the conclusion that plaintiffs have presented a prima facie case of design defect under Michigan law. This Court's prior ruling granting Bic's motion for summary judgment on the design defect claim was thus improvidently issued. Accordingly, the motion to reconsider the prior ruling is granted. The Court now holds that Bic's motion for summary judgment of the design defect claim is denied.

## BREACH OF IMPLIED WARRANTY

■ Plaintiffs claim that Bic breached an implied warranty. Breach of implied warranty and negligence are separate and distinct theories of liability. *Prentis*, 421 Mich. at 692, 365 N.W.2d 176. Nevertheless, *Prentis* holds that when a design defect claim is made against a manufacturer, a negligence instruction covers breach of implied warranty. In *Prentis* the court determined that the trial court's refusal to give an implied warranty instruction was not error since to do so would only have confused the jury. *Id.* at 694, 365 N.W.2d 176. Accordingly, the court held that in a products liability action against a manufacture based on a design defect theory, the jury need only be instructed on a single unified theory of negligent design. Plaintiffs do not respond to this argument proffered by defendant Bic.

Although plaintiffs allege both breach of an implied warranty and design defect, evidence presented at trial would center on the unified theory that Bic's lighter was defectively designed. Recovery under either theory would require the trier of fact to make a determination on whether or not the lighter was unreasonably dangerous because it did not contain a safety device. Plaintiffs present no evidence that this Court was earlier misled by a palpable defect in analyzing this claim. Local Rule 7.1(h)(3). Accordingly, plaintiffs' implied warranty claim was properly dismissed.

## CONSUMER PRODUCT SAFETY ACT

■ Plaintiffs assert a claim under the Consumer Product Safety Act ("CPSA"), 15 U.S.C. §§ 2051, *et seq.*, via the regulations provided in the Poison Prevention Packaging Act ("PPPA"), 15 U.S.C. §§ 1471, *et seq.*, and the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. § 1261(f)(1)(A), *et seq.* Specifically, plaintiffs argue that defendant Bic unlawfully manufactured and/or sold its lighters in violation of § 2068(a)(1) of the CPSA for the reason that it failed to comply with the applicable standards set forth in the PPPA regulations. In furtherance of their claim, plaintiffs maintain that defendant's lighter is a "package" for butane lighter fuel, as defined by 15 U.S.C. § 1471(3) of the

PPPA. Because of the degree or nature of the hazard to children, plaintiffs allege that the butane lighter fuel required "special packaging," which is and was feasible, practicable and appropriate, as provided in 15 U.S.C. § 1471(4) of the PPPA. In addition, plaintiffs allege that the butane fuel contained within the lighter meets the definition of the term "hazardous substance" in section 2(f)(1)(A) of the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. § 1261(f)(1)(A), because it is "flammable," and in some cases may cause substantial personal injury or illness as a proximate result of customary or reasonably foreseeable use. In sum, plaintiffs maintain that, read together, these regulations of the PPPA and FHSA require the "package" for cigarette lighter fuel (i.e. the Bic lighter) to be child-resistant.

The term "package" under the PPPA means "the immediate container or wrapping in which any household substance is contained for consumption, use, or storage. . . ." 15 U.S.C. § 1471(3). In dismissing a claim based upon this identical argument in *Bondie v. Bic Corp.*, 739 F.Supp. 346, 353 (E.D.Mich. 1990), the court held that "a lighter is not a package for butane, and thus ... [the] PPPA does not apply." *See also Curtis v. Universal Match Corp.*, 778 F.Supp. 1421 (E.D.Tenn.1991), *affirmed mem.*, 966 F.2d 1451 (6th Cir.1992) (same).

While this Court disagrees with the reasoning applied in *Bondie* and *Curtis,* it nevertheless reaches the same result. The Commission has determined that butane fuel contained within a lighter meets the definition of the term "hazardous substance" in section 2(f)(1)(A) of the FHSA. In addition, the Commission has also determined that a lighter meets the definition of the term "package" as set forth in section 2(3) of the PPPA, 15 U.S.C. § 1471(3), because it is the "immediate container" in which a hazardous substance is contained for use by individuals in a household. *See* 58 F.R. 37554, 5 (July 12, 1993). Although the FHSA authorizes the Commission to regulate lighters because same are containers of fuel (which is a "hazardous substance"), there is no provision of the FHSA which authorizes the Commission

to address any hazard which is associated with the mechanical operation of a lighter as a flame-producing device. *See Id.* at 6. Similarly, even though the PPPA authorizes the Commission to regulate a butane lighter as a "package" which contains a "hazardous substance," the Commission is without authority to regulate, under the PPPA, against designs which too easily allow children to operate a lighter. It would be proper under the PPPA for the Commission to issue a rule which mandates that lighters be "significantly difficult" for young children to "open or obtain a toxic or harmful amount of the substance contained therein." *Id.* However:

> [T]he ability of young children 'to open' the lighter or 'obtain a toxic or harmful amount' of the fuel contained within the lighter is not the risk of injury associated with lighters under consideration by the Commission [in accidental fire cases]. Rather, it is the risk of death and injury from fires started by children with lighters

*Id.* at 7. A recent rule issued by the Commission illustrates the above principles:

> § 1145.16 Lighters that are intended for igniting smoking materials and that can be operated by children; risks of death or injury.
>
> (a) The Commission finds that it is in the public interest to regulate under the Consumer Product Safety Act any risks of injury associated with the fact that lighters intended for igniting smoking materials can be operated by young children, *rather than regulate such risks under the Federal Hazardous Substances Act or the Poison Prevention Packaging Act of 1970.*
>
> (b) Therefore, if the Commission finds regulation to be necessary, risks of death or injury that are associated with lighters that are intended for igniting smoking materials, where such risks exist because the lighters can be operated by young children, shall be regulated under one or more provisions of the Consumer Product Safety Act. Other risks associated with such lighters, and that are based solely on the fact that the lighters contain a hazardous substance, shall continue to be regulated under the Federal Hazardous Substances Act.

16 C.F.R. § 1145.16 (emphasis added). This rule, which took effect July 12, 1993, makes clear that plaintiffs' CPSA claim of design defect—predicated on PPPA and FHSA regulations—is without merit. Under the Consumer Product Safety Act, the Commission has recently issued a safety standard (16 C.F.R. § 1210 et. seq.) which requires disposable and novelty lighters, as those terms are defined in the standard, to meet specified requirements for child resistance. The requirements are intended to reduce the risk of the injuries and deaths that occur from fires started by children under the age of 5 playing with cigarette lighters. 58 F.R. 37557, 1 (July 12, 1993). The standard also includes labeling, testing, recordkeeping, reporting, and stockpiling requirements for manufacturers and importers. The new standard is of no value to the plaintiffs, however, as it only applies to disposable and novelty lighters manufactured in the United States or imported on or after July 12, 1994. *Id.* Accordingly, the Court's prior disposal of these claims on summary judgment was proper.

## RECKLESS AND WANTON MISCONDUCT

■ Plaintiffs allege, under a theory of "reckless and wanton misconduct," that defendant is liable because it was aware that its lighter was both attractive and harmful to children and nevertheless did not include sufficient means or mechanisms in its design to prevent or restrict the operation of the lighter by a child. In *Gibbard v. Cursan*, 225 Mich. 311, 196 N.W. 398 (1923), the Michigan Supreme Court set forth the three elements necessary to prove that an injury was willfully or wantonly inflicted:

(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another;

(2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand;

(3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.

*Gibbard v. Cursan*, 225 Mich. at 322, 196 N.W. 398.

In analyzing this test, the Court in *Burnett v. Adrian*, 414 Mich. 448, 326 N.W.2d ·810 (1982), noted that the rule in *Gibbard* is that "wilful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be equivalent of a willingness that it does." *Burnett*, 414 Mich. at 455, 326 N.W.2d 810. The Court rejected the first two prongs of the "poorly phrased" *Gibbard* test as being "cast entirely in language of ordinary negligence...." *Id.* at 456, 326 N.W.2d 810. In upholding the test, the court instead relied upon its third prong, which requires a grievant to show that an injury is "likely." *Id.* The court concluded that:

It is in that concept—the notion that in the circumstances of a given case the *injury is probable, or expected, or likely*—that is found the requisite indifference to harm tantamount to a willingness that it occur, if not a specific intent that it does, which distinguishes willful and wanton misconduct from ordinary negligence

*Burnett*, 414 Mich. at 456, 326 N.W.2d 810 (emphasis added).

In their claim for reckless and wanton misconduct, plaintiffs in the instant case do not allege (nor could they) that the injury was either "likely" or "probable." Nor do they, in the instant motion for reconsideration of this claim, present evidence that this Court was misled by a palpable defect. Local Rule 7.1(h)(3). Accordingly, summary judgment as to this count was properly granted.

## EXPRESS WARRANTY

■ Plaintiffs final claim is for breach of an express warranty. In support of this theory, plaintiffs merely allege that Bic's cigarette lighter did not perform as warranted, because it burned the three children to death. The warranty, Bic's "Performance Policy," is clearly stated on the packaging of the lighter:

BIC PERFORMANCE POLICY. This Bic product has been designed and manufactured to give you complete satisfaction.

If for any reason you are not satisfied with the performance of this product, Bic will replace it at no cost to you

Plaintiffs do not contest Bic's assertion that the above warranty was the only one expressly issued by Bic. By its plain terms the Performance Policy explicitly limits recovery to the replacement of the lighter. There is thus no dispute that the relief requested by plaintiffs—ten million dollars—is not recoverable under the express warranty offered by Bic, and accordingly no genuine issue of material fact exists for trial on this count. Defendant Bic's motion for summary judgment was (as is conceded by plaintiff's in their instant motion for reconsideration) properly granted.

## VII. CONCLUSION

For the aforementioned reasons, plaintiffs' motion for reconsideration is GRANTED as to the design defect claim and DENIED as to all other claims. Because this Court has now determined that defendant's motion for summary judgment on the design defect claim was improvidently granted, it now VACATES its earlier entry of judgment for the defendant.

IT IS SO ORDERED.